UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL CHRISTOPHER YOUNG,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN RICHARD BURLINGHAM, et al.,<br><br>Defendants. | No. 2:22–cv–0590–JAM-CKD PS<br><br>ORDER & FINDINGS AND RECOMMENDATIONS TO DISMISS SUA SPONTE<br><br>(ECF Nos. 1, 5, 6, 8, 12) |

On April 4, 2022, plaintiff filed a fee-paid complaint initiating this action against twelve defendants involved in California state probate court proceedings connected with the conservatorship of plaintiff's mother.[1] (ECF No. 1.) Because the complaint failed to establish this court's subject matter jurisdiction and appeared to be barred by a previous case of plaintiff's, the court on May 4, 2022 issued an order for plaintiff to show cause within 14 days why the case should not be dismissed. (ECF No 4.)

On May 16, 2022, the show cause order was returned to the court as undeliverable; however, plaintiff continues to file motions and other documents listing the same street address listed as his address of record for this case. (See, e.g., ECF Nos. 6, 7.) Another filing states that

---

[1] Because plaintiff is self-represented, all pre-trial proceedings are referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1) and E.D. Cal. Local Rule 302(c)(21).

1

plaintiff is living out of his car.  (ECF No. 5 at 1.)  It is unclear whether plaintiff has received the May 4th show cause order and whether he intends any of his numerous filings since its issuance to serve as a response to it.[2]  Plaintiff's possible housing instability, however unfortunate, does not relieve him of his duty as a self-represented prosecuting party to maintain a current address for receipt of the court's orders.

Presented with no showing of good cause, the undersigned recommends that this case be dismissed.  The various motions and filings received since the May 4th show cause order confirm that the court lacks subject matter jurisdiction over this suit.

**BACKGROUND**

None of the defendants have yet appeared or responded to the complaint, and the May 4th show cause order instructed that the defendants were not required to respond to the complaint until the show cause order was deemed satisfied.  (ECF No. 4 at 7.)  However, courts have "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."  Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010).  Pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

Plaintiff has repeatedly filed suit in this federal court against the same individuals for fraud and corruption that allegedly took place in probate proceedings in Sacramento County Superior Court connected with the conservatorship of plaintiff's mother.  (See Young et al. v. Burlingham et al., No. 2:21-cv-00537-TLN-KJN; Young v. Burlingham et al., No. 2:21-cv-01660-KJM-AC; Young v. Burlingham et al., No. 2:22-cv-00053-TLN-CKD.)  In each of those suits, plaintiff was advised of issues with establishing the court's subject matter jurisdiction.  In addition, Case No. 2:21-cv-00537 (hereafter "the 537 Action") was involuntarily dismissed with prejudice under Rule 41(b) for failure to comply with court orders by failing to oppose the defendants' motions to dismiss.  (No. 2:21-cv-00537, ECF Nos. 15, 18.)

---

[2] Although the document filed at ECF No. 7 was docketed as a Reply to the Order to Show Cause, that filing does not describe itself as such, nor does it expressly refer to the May 4th show cause order.

2

1  Given this background, the court ordered plaintiff to show cause (1) why the court has
2  subject matter jurisdiction, and (2) why this suit is not barred by the "with prejudice" dismissal of
3  plaintiff's substantively identical prior suit.
4  **DISCUSSION**
5  The undersigned now concludes that (1) the court lacks subject matter jurisdiction for at
6  least two reasons, and (2) this action is barred by the doctrine of res judicata.

   **1. Lack of Subject Matter Jurisdiction**

8  "Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of
9  Am., 511 U.S. 375, 377 (1994). A federal district court generally has jurisdiction over a civil
10 action when (1) a federal question is presented in an action "arising under the Constitution, laws,
11 or treaties of the United States" or (2) there is complete diversity of citizenship between the
12 parties and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332(a). A
13 complaint that fails to establish either type of jurisdictional basis must be dismissed. In addition,
14 various judicial doctrines require dismissal for lack of jurisdiction even when federal question or
15 diversity jurisdiction is present on the face of the complaint.
16 In this case, dismissal is required for both reasons.

   ***1. No Diversity or Federal Question Jurisdiction***

18 Plaintiff's complaint does not assert "diversity jurisdiction," and for good reason, because
19 it appears that plaintiff and all twelve defendants are citizens of California. (ECF No. 1 at 2, 5-7
20 (listing California addresses).) See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546,
21 553 (2005) (for § 1332(a), complete diversity requires that each plaintiff must be a citizen of a
22 different state from the defendants).
23 Instead, plaintiff asserts "federal question" jurisdiction based on three grounds. First, the
24 complaint lists "(Fraud Upon the Court) as set forth in (Cox v. Burke) 706 So. 2d 43 47 (Fla. 5th
25 DCA 1998)." (ECF No. 1 at 1, 4.) As made clear by plaintiff's subsequent filings, plaintiff's
26 entire theory for this suit is that the California Superior Court wrongly entered various rulings
27 against him in the conservatorship proceedings, based on allegedly fraudulent conduct by
28 opposing parties and their counsel. "Fraud on the court" is not a federal cause of action, and Cox

3

v. Burke is a Florida state court case that has no bearing on federal jurisdiction. The cited portion of that case dealt with the state court's inherent authority to dismiss a claim before it if a party or their counsel is acting in a fraudulent manner. Id. at 46-47.

Second, the complaint asserts jurisdiction under California Penal Code § 182(a), which makes conspiracy a criminal state offense. (ECF No. 1 at 1, 4.) However, private citizens have no authority to assert civil claims under the criminal code, either state or federal. See Allen v. Gold Country Casino, 464 F.3d 1044, 1048 (9th Cir. 2006) (no private right of action for violation of criminal statutes).

Third, the complaint asserts jurisdiction based on "deprivation of rights under color of law," briefly referencing in the caption the Due Process and Equal Protection Clauses of the Fourteenth Amendment. (ECF No. 1 at 1, 4.) The court understands plaintiff to be invoking 42 U.S.C. § 1983, which "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001). To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person *acting under color of state law*. See West v. Atkins, 487 U.S. 42, 48 (1988).

Section 1983 would give the court jurisdiction if the complaint named any defendants who were subject to suit thereunder. However, the complaint makes plain that 11 of the 12 defendants are not "state actors" subject to suit under § 1983, and the only arguable state actor is immune from this suit. All of the defendants besides Court Investigator Robin Pearl are private persons involved in a personal capacity in the conservatorship/probate proceedings at issue: plaintiff's brother, the court-appointed conservator/fiduciary, and the numerous attorneys and legal staff representing the probate parties.[3]

////

---

[3] Plaintiff provides an address for defendant attorney Olena Likhachova that indicates she works for the California Department of Justice. However, the pleadings and attachments make clear that Likhachova is named in connection with her representation of plaintiff's brother while she was in private practice. (ECF No. 1 at 41, 44, 50.)

Conduct by private individuals or entities is generally not actionable under § 1983. See Gomez v. Toledo, 446 U.S. 635, 640 (1980) (a private individual generally does not act under color of state law). Conduct by private individuals or entities is only actionable under § 1983 if there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001) (cleaned up). In alleging various and sundry acts of fraud and conspiracy, plaintiff identifies nothing linking these defendants to the State itself. That these acts took place in connection with a state court proceeding does not satisfy § 1983's "state action" requirement.

Defendant Robin Pearl is the only defendant arguably sued in connection with actions taken under color of state law. The complaint identifies Ms. Pearl as a "Court Investigator" and, as best the court can tell, she is sued here for two actions taken in the probate case: (1) "produc[ing]" a "fraudulent investigator report" of elder abuse, which led to plaintiff being removed from the home he previously shared with his mother (ECF No. 1 at 11, 23), and (2) creating an "investigative report" recommending that plaintiff's mother should be represented by court-appointed counsel to avoid the conflict of interest with her being represented by the same private attorney who was representing plaintiff (id. at 27).

Both of these actions are the type taken in the normal course of a Probate Court Investigator performing her official duties. See Cal. Probate Code § 1826 (establishing court investigator duties including reviewing allegations of the petition, interviewing petitioners and relatives, and reporting to the Superior Court in writing regarding various matters, such as representation and appointment of legal counsel). Given that these are integral parts of the judicial process for state court probate proceedings, Ms. Pearl is immune from suit for these actions under the doctrine of quasi-judicial immunity. See Moore v. Brewster, 96 F.3d 1240, 1244 (9th Cir. 1996) ("The concern for the integrity of the judicial process that underlies the absolute immunity of judges is reflected in the extension of absolute immunity to certain others who perform functions closely associated with the judicial process."); In re Castillo, 297 F.3d 940, 947-49 (9th Cir. 2002) (overruled in part on other grounds) (noting that quasi-judicial

immunity extends "to court clerks and other nonjudicial officers for purely administrative acts—acts which taken out of context would appear ministerial, but when viewed in context are actually a part of the judicial function."). Thus, even assuming the complaint's minimal allegations sufficiently stated a § 1983 claim against Ms. Pearl, she is immune from suit.

### 2. *Rooker-Feldman* Bar

Even if the complaint could be construed to state a § 1983 claim, dismissal is nevertheless required under the Rooker-Feldman doctrine.[4] "[T]he Rooker-Feldman doctrine bars suits 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Carmona v. Carmona, 603 F.3d 1041, 1050 (9th Cir. 2010) (quoting Exxon Mobil Corp. v. Saudi Basic Indust. Corp., 544 U.S. 280, 284 (2005)). The doctrine applies when "the action contains a forbidden de facto appeal of a state court decision." Bell v. City of Boise, 709 F.3d 890, 897 (9th Cir. 2013). "A de facto appeal exists when 'a federal plaintiff [1] asserts as a legal wrong an allegedly erroneous decision by a state court, and [2] seeks relief from a state court judgment based on that decision.'" Id. (quoting Noel v. Hall, 341 F.3d 1148, 1164 (9th Cir. 2003)). If the federal action constitutes a de facto appeal, district courts are barred from deciding not only the issues decided by the state court, but also any other issues that are "inextricably intertwined" with an issue resolved by the state court's decision. Kougasian v. TMSL, Inc., 359 F.3d 1136, 1142 (9th Cir. 2004) (citing Noel, 341 F.3d at 1158).

Plaintiff's complaint and his many subsequent motions and filings demonstrate that both elements of a de facto appeal are present in this case.[5] First, plaintiff's entire reason for bringing this suit is that over the course of the conservatorship proceedings, the Superior Court made several erroneous decisions: (1) ordering him to vacate the house he shared with his mother, based on allegation of financial elder abuse, (2) issuing a restraining order against him, and

---

[4] See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

[5] In addition, the contested Superior Court rulings were entered between 2018 and 2021, before this federal action was filed in April 2022.

6

(3) entering a judgment of $2,109,000 against him, based on a finding that he misappropriated equity in certain real property.  (See ECF No. 1 at 12, 23, 72-73; ECF Nos. 6 at 5, 7 at 1, and 8 at 2.)  Plaintiff asserts that these rulings were wrongly decided based on fraudulent statements and evidence presented to the court by other parties and their counsel.  (ECF Nos. 6 at 1, 7 at 1.)  Thus, these court-imposed injuries were caused by the Superior Court's alleged legal errors in reviewing the evidence submitted in the conservatorship proceedings.  See Noel, 341 F.3d at 1164 (Rooker-Feldman bar applies when the "federal plaintiff [is] complaining of legal injury caused by a state court judgment because of a legal error committed by the state court").

Although plaintiff's complaint asserts widespread fraud in the state court proceedings, none of the alleged types of fraud contributing to the Superior Court's orders qualifies as "extrinsic" fraud that would avoid the Rooker-Feldman bar.  See Benavidez v. Cty. of San Diego, 993 F.3d 1134, 1143 (9th Cir. 2021) ("[W]here a party alleges extrinsic fraud by an adverse party in procuring a state court judgment, the Rooker-Feldman doctrine does not apply, because such a claim does not challenge the state court decision directly.").  "Extrinsic fraud is conduct which prevents a party from presenting his claim in court."  Kougasian, 359 F.3d at 1140 (quotation omitted).  To qualify as extrinsic, the alleged fraud must be "collateral to the matters involved in the action."  Green v. Ancora-Citronelle Corp., 577 F.2d 1380, 1384 (9th Cir. 1978).  By contrast, "intrinsic" fraud "goes to the very heart of the issues contested in the state court action."  Id.

All of the "exhibits" plaintiff includes with the complaint and continues to file separately are offered to contradict the Superior Court's finding that plaintiff improperly withdrew equity from his mother's real property.  This goes to the core of the dispute in the conservatorship proceedings.  Cf. Green, 577 F.2d at 1384.  Moreover, none of the alleged acts of fraud and "corruption" prevented plaintiff from raising his fraud-related claims or objections to the Superior Court.  Cf. Kougasian, 359 F.3d at 1140; Lewis v. L.A. Metro. Transit Auth., No. CV-19-1456-PSG-JPRx, 2019 WL 6448944, at *3-4 (C.D. Cal. Sept. 10, 2019) (because the allegedly fraudulent actions "would have merely weakened Plaintiff's case, rather than prevented him from getting into court at all," plaintiff at best alleged intrinsic fraud, so Rooker-Feldman bar applied (cleaned up)).

Second, as clarified by the post-complaint filings, this lawsuit seeks to set aside the above-mentioned Superior Court rulings. See Kougasian, 359 F.3d at 1140 ("Rooker-Feldman . . . applies only when the federal plaintiff both [1] asserts as her injury legal error or errors by the state court and [2] seeks as her remedy relief from the state court judgment."); Cooper v. Ramos, 704 F.3d 772, 777-78 (9th Cir. 2012) ("To determine whether an action functions as a de facto appeal, [courts] pay close attention to the relief sought by the federal-court plaintiff." (quotation omitted)).

The complaint itself is unclear as to what relief plaintiff seeks—other than holding every defendant "guilty" of fraud. Plaintiff's several subsequent motions and filings, however, repeatedly and explicitly request relief from the Superior Court's various rulings. (See ECF Nos. 5, 6, 8, motions for "Relief From a Judgment Under Federal Rule 60(b)(6)"; ECF No. 6 at 1, stating "I would like immediately the (Stay Away) Restraining order revoked," which would void all other judgments since produced; ECF No. 11 at 2, intent to have all judgments "vitiated" and thereby return his ownership interest in properties; ECF No. 12 at 2, "requesting for a[n] immediate release from the (Judgement)" of the Superior Court.) These express requests for relief from the state court's judgment easily satisfy the second element of a de facto appeal. See Kougasian, 359 F.3d at 1140. For plaintiff's benefit, the court notes that Federal Rule 60(b)(6) only permits a court to grant a litigant relief from judgment previously entered by the same court. It does not provide a method of challenging another court's judgment.

Finally, plaintiff's complaint raises no other claims beyond those contesting the Superior Court's rulings described above. Thus, the court need not analyze whether any claims are "inextricably intertwined" with an issue resolved by the Superior Court. See Kougasian, 359 F.3d at 1142 ("The inextricably intertwined test . . . allows courts to dismiss claims closely related to claims that are themselves barred under Rooker-Feldman.").

Accordingly, this suit is barred by the Rooker-Feldman doctrine and must be dismissed for that reason as well.

////

////

### 2. Res Judicata from the 537 Action

Finally, there is one more reason that this suit must be dismissed: res judicata. The doctrine of res judicata, also known as claim preclusion, protects "litigants from the burden of relitigating an identical issue" and promotes "judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979). Res judicata provides that "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Headwaters Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1051 (9th Cir. 2005). "The elements necessary to establish res judicata are: (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." Id. at 1052 (internal quotation omitted).[6]

Comparing the March 2021 complaint filed in the 537 Action and the complaint filed in this case, it appears that all three elements are satisfied so as to bar plaintiff from proceeding with this litigation. As to the first and second elements, both complaints assert identical purported causes of action under the state penal code and the Fourteenth Amendment, regarding the same allegedly fraudulent conduct and conspiracies against plaintiff in the probate proceedings; and both name the exact same defendants (with the 537 Action also naming a thirteenth additional defendant not named here). Indeed, plaintiff confirms in the present complaint that he is "refiling [his] case against all of the (Defendant's) from my previous filing." (ECF No. 1 at 10 (sic).)

As to the second element, the 537 Action resulted in a final judgment on the merits because it was dismissed "with prejudice" under Rule 41(b) as a sanction for not complying with court orders and failing to prosecute the case. (No. 2:21-cv-00537, ECF No. 15, recommending dismissal sanction; id., ECF No. 18 at 2, adopting F&Rs and dismissing "with prejudice" under Rule 41(b).) Several of the defendants moved to dismiss the 537 Action, and despite being given

---

[6] "[I]f a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the [preclusion] defense has not been raised," Arizona v. California, 530 U.S. 392, 416 (2000), provided that the parties have an opportunity to be heard prior to dismissal. Headwaters Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1054-55 (9th Cir. 2005). "As a general matter, a court may, *sua sponte*, dismiss a case on preclusion grounds 'where the records of that court show that a previous action covering the same subject matter and parties had been dismissed.'" Id. (quoting Evarts v. W. Metal Finishing Co., 253 F.2d 637, 639 n.1 (9th Cir. 1958)).

multiple opportunities and a directive to respond to the motion, plaintiff failed to file any opposition or notice of non-opposition. (Id., ECF Nos. 8, 9, 11.) After notifying plaintiff that the case would be dismissed with prejudice as a sanction if plaintiff did not comply with the court's rules and orders, the magistrate judge recommended dismissal with prejudice under Rule 41(b) based on his analysis of the Ferdik factors.[7] (Id., ECF Nos. 11 at 2-3, 15 at 2-4.) The district judge adopted that recommendation, and final judgment dismissing the action "with prejudice" was entered on August 31, 2021 (id., ECF Nos. 18, 19)—many months before plaintiff filed the present complaint on April 4, 2022.

      The Supreme Court has held that a dismissal with prejudice under Rule 41(b) bars a plaintiff from refiling the same claim in the same court. Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505–06 (2001); see Costello v. United States, 365 U.S. 265, 287 (1961) (Rule 41(b) dismissals operate as adjudications on the merits where "the defendant has been put to the trouble of preparing his defense"). By the terms of Rule 41(b), an involuntary dismissal operates as an adjudication on the merits unless the dismissal order states otherwise, or if the dismissal was for lack of jurisdiction, improper venue, or failure to join a necessary party. Fed. R. Civ. P. 41(b). None of these exceptions applies here where the 537 Action was explicitly dismissed "with prejudice" as a sanction for failure to follow court rules and failure to prosecute, and the dismissal was ordered after weighing the Ferdik prejudice factors. C.f. Gibson v. Cty. of Orange, No. 8:20-CV-01232-JWH-DFMx, 2021 WL 860000, at *7 (C.D. Cal. Mar. 8, 2021) (finding prior court did not intend its dismissal with prejudice to have claim-preclusive effect under Rule 41(b) because court did not conduct the required multi-factor prejudice analysis in its dismissal order).

      Thus, plaintiff's claims against all twelve defendants are barred by the doctrine of res judicata because they were previously adjudicated on the merits in the 537 Action.

////

////

---

[7] Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992)

**RECOMMENDATION**

For all of these reasons, it is HEREBY RECOMMENDED that:

1. This case be DISMISSED for lack of subject matter jurisdiction and as barred by res judicata;
2. Plaintiff's miscellaneous motions (ECF Nos. 5, 6, 8, 12) be DENIED both as moot and as procedurally improper; and
3. The Clerk of Court be instructed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within **seven (7) days** after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

**ORDER**

Because of the court's findings and recommendations, it is HEREBY ORDERED that:

1. The Initial Scheduling Conference set for September 7, 2022 is VACATED; and
2. All pleading, discovery, and motion practice in this action are STAYED pending resolution of these findings and recommendations. Other than objections to the findings and recommendations or non-frivolous motions for emergency relief, the court will not entertain or respond to any pleadings or motions until the findings and recommendations are resolved.

Dated:  June 28, 2022

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

19, youn.0590

11